SEBASTIAN DOUGLAS ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE
TOWN OF WATERTOWN
(AC 31626)

DiPentima, C. J., and Lavine and Flynn, Js.

Argued October 19, 2010—officially released March 8, 2011

*Marjorie Shansky*, for the appellants (plaintiffs).

*Dov Braunstein*, with whom, on the brief, was *Paul R. Jessell*, for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff Jonathan Andrew and the intervening plaintiffs, Sebastian Douglas, Gloria Lynn, Elizabeth Wasiutynski, Bohdan Wasiutynski, Angela Maggi, Judith M. Wick and Glenn LaFreniere, appeal from the judgment of the trial court dismissing their challenge to the defendant Watertown planning and zoning commission's (commission) adoption of a text amendment to the Watertown zoning regulations (text amendment) to create a B-PCD262 zone permitting retail and office development in an existing industrial zone. The text amendment created what the trial court termed an "overlay zone," which, under specific circumstances and subject to specific preconditions detailed in the text amendment, affected the land bounded by Route 262, Turkey Brook, Echo Lake Road, Connecticut Route 8, and Frost Bridge Road, in Watertown. Andrew (landed plaintiff) appeals as an owner of land located within the newly created zoning district pursuant to General Statutes § 8-8 (a) (1),[1] and the other seven plaintiffs (intervening plaintiffs) each filed verified petitions

---

[1] General Statutes § 8-8 (a) provides in relevant part: "As used in this section: (1) 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board. . . ."

to intervene in the administrative proceedings before the commission pursuant to General Statutes § 22a-19 (a). On appeal to this court, the landed plaintiff contends that the trial court erred in holding that he did not have standing to challenge the adoption of the text amendment establishing the new zoning district. The intervening plaintiffs contend, inter alia, that the trial court erred in holding that they did not have standing to appeal to the Superior Court from the decision of the commission adopting the new zoning district. We conclude that the trial court improperly dismissed the landed plaintiff's case and reverse the judgment in part with direction to restore the landed plaintiff's case to the docket. As to the intervening plaintiffs, we affirm the judgment of the trial court dismissing their intervening complaint.

The following facts are relevant to our analysis. The landed plaintiff owns land that abuts or is within a radius of 100 feet of the new zoning district, and the intervening plaintiffs own land elsewhere in the town of Watertown. The commission proposed a text amendment to article III—business districts of the Watertown zoning regulations to add a new Section 36 entitled "Draft November 8, 2008, Route 262 Planned Commercial District (B-PCD262)." See Watertown Zoning Regs., § 36. The text amendment added to the previously permitted industrial uses certain commercial uses for the development of "high quality retail and office development."[2] Section 36.2 of the Watertown zoning regulations provides in relevant part that "[t]he outermost

---

[2] Section 36.1.1 of the Watertown zoning regulations provides that the intent of the B-PCD262 zone is to: "Provide an opportunity for high quality commercial development near Route 8 along a portion of Route 262 and Echo Lake Road east of Turkey Brook within a Planned Commercial District overlay zone to be adopted in accordance with a Zoning Map petition on the existing IR-80 zoning District. The primary objectives of the District are to expand retail, office, and other compatible use options within the Town of Watertown, as defined in Sections 36.9 and 36.10, and to increase the diversity of the town's tax base." See also § 36.9 of the Watertown zoning regulations (permitted uses).

boundaries of the overlay District are Route 262, Turkey Brook, Echo Lake Road, Route 8, and Frost Bridge Road," consisting of only approximately 150 acres.[3] After hearings, the commission enacted the text amendment on November 10, 2008, and published notice on November 13, 2008, in the newspaper.

The intervening plaintiffs and the landed plaintiff filed the original action, by verified complaint, on January 2, 2009. The intervening plaintiffs were all recognized by the trial court as intervening petitioners during the zoning hearing pursuant to § 22a-19 (a). In their response to the motion to dismiss, the intervening plaintiffs claimed inadequacies in the special permit process

---

[3] Section 36.2 of the Watertown zoning regulations provides: "Overlay District Location: The Commission may adopt and may amend an overlay zoning District, hereinafter defined as 'District', 'Planned Commercial District', or 'B-PCD262', to an IR-80 District in accordance with the procedures, guidelines, standards and conditions specified in Section 81 and these Regulations. On a lot or lots within the overlay District, only buildings, other structures, and site improvements associated with uses consistent with Section 36.9 and Section 36.10 are permitted. The outermost boundaries of the overlay District are Route 262, Turkey Brook, Echo Lake Road, Route 8, and Frost Bridge Road. The Commission may amend the Zoning Map to include all or a portion of land within said boundaries to be the B-PCD262 overlay District. A lot or any portion of a lot not within the adopted overlay District, as District is defined on the Zoning Map, is not in the District. The Planned Commercial District may be one or several lots, however, the Commission encourages all lots in the District to be developed as if one parcel. No lot may be developed inconsistent with the provisions and intent of Section 36, as determined by the Commission. The location, orientation, structure, texture, materials, landscaping, and other features shall be consistent with the character of the District, character of the neighborhood, character of the Town, the Zoning and Subdivision Regulations, the Zoning Map, and the Plan of Conservation and Development, all as interpreted by the Commission. Development of a parcel should demonstrate high quality design merit."

The trial court refers to the new zoning district as "in the area generally described as land north of Route 262, south of Echo Lake Road and west of Route 8 . . . ." Each description refers to the same bounded area creating the new zoning district. For the purpose of this opinion, we use the description of the bounds defined in § 36.2 of the regulations. This minor difference in language is immaterial because the specific boundaries are adequately defined in both descriptions and the bounds are not in dispute.

and that traffic volume will have a severe environmental impact and thus were aggrieved. The landed plaintiff claimed aggrievement because he is the owner of property that is within, abuts or is within a radius of 100 feet of the 150 acre area identified by the defendant for the overlay zone. All plaintiffs claimed aggrievement because the approval of the amendment was illegal, arbitrary, capricious, in abuse of the commission's discretion and in violation of its own regulations and applicable statutes. In response, the commission argued that the plaintiffs were not aggrieved and, thus, lacked standing to bring the case. The commission filed a motion to dismiss on February 6, 2009. The commission filed a reply to the plaintiffs' objection on March 26, 2009. The trial court, *Brunetti, J.*, granted the commission's motion to dismiss on July 21, 2009, by written memorandum of decision. This appeal followed.

We begin by setting forth the legal principles that govern our review. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage [of] the proceedings. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue." (Citations omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 485–86, 815 A.2d 1188 (2003).

I

We first address the judgment of dismissal as it relates only to the landed plaintiff. The landed plaintiff claims that the trial court erred in holding that he did not have standing to challenge the commission's adoption of the text amendment to the zoning regulations. Specifically, he argues that he is statutorily aggrieved under § 8-8 (a) (1) because his land abuts or is within a radius of 100 feet of the area affected by the newly created overlay zone. In response, the commission argues that the landed plaintiff does not have standing because the text amendment created a floating zone. Specifically, the commission argues that the zone does not apply to any specific parcel of land, and, therefore, the landed plaintiff is not aggrieved. We agree with the landed plaintiff.

We begin by addressing the defendant's claim that the text amendment created a floating zone.[4] By definition, a floating zone does not apply to a specifically described parcel of land. *Campion* v. *Board of Aldermen*, 278 Conn. 500, 519, 899 A.2d 542 (2006). A floating zone "differs from the traditional 'Euclidean' zone [which has definite bounds] in that it has no defined boundaries and is said to 'float' over the entire area where it may eventually be established." *Schwartz* v. *Town Plan & Zoning Commission*, 168 Conn. 20, 22, 357 A.2d 495 (1975). In *Schwartz*, our Supreme Court held that the plaintiffs were not aggrieved by the enactment of floating zone regulations. Id., 25–26. "At the time of [the commission's] adoption the new districts, designated regional, community, and neighborhood shopping center districts, did not affect any particular area or property within the town." Id., 22. In examining the *Schwartz* decision, this court in *Hayes Family Ltd. Partnership* v. *Planning & Zoning Commission*, 98 Conn. App. 213, 222 n.9, 907 A.2d 1235 (2006), cert. denied, 281 Conn. 903, 904, 916 A.2d 44 (2007), concluded that *Schwartz* is distinguishable from cases in which the plaintiff can demonstrate that it, unlike the community as a whole, owned property likely to be affected by a particular regulation. Additionally, the *Hayes* court noted that there was no indication that the plaintiffs in *Schwartz* even owned property whose

---

[4] The trial court refers to the newly created zoning district as an overlay zone. Citing *Heithaus* v. *Planning & Zoning Commission*, 258 Conn. 205, 216–18, 779 A.2d 750 (2001), the trial court stated that "[a]n overlay zone has been considered a 'floating zone,' which is a zone that floats 'over the entire area where it may eventually be established' or a 'special permit.' " The trial court found that "the floating zone is a more proper designation [of the area in the present case], as this overlay zone is alleged to create a zone which will allow for zoning changes." The trial court dismissed the case based on a finding that no particular area or property was affected, the quintessential attribute of a floating zone. Despite the trial court's reference to this area as an overlay zone, whether the area in question properly can be considered a floating zone is relevant to our resolution of this claim.

development potential was impacted directly by a specific provision in those regulations. Id. "Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest." (Internal quotation marks omitted.) Id., 222. "Since the floating zone regulations establish a zone for a type of use with an *undetermined location,* the zone can technically be applied anywhere in the municipality. It can result in individual preferences and respond to development pressures rather than considering the best area for location of particular uses." (Emphasis added; internal quotation marks omitted.) *Campion* v. *Board of Aldermen,* supra, 519.

The trial court held that the landed plaintiff was not aggrieved because no particular area was affected by the text amendment. The court, citing *Schwartz* v. *Town Plan & Zoning Commission,* supra, 168 Conn. 23, reasoned that "there can be no aggrievement when the zoning regulations of a municipality are amended in such a way that no particular area or property is affected." (Internal quotation marks omitted.) In particular, under *Schwartz,* "[b]efore the floating zone can 'descend,' an application must be made for a change of zone and a public hearing must be held." *Schwartz* v. *Town Plan & Zoning Commission,* supra, 24. The trial court also relied on a more recent case, *Harris* v. *Zoning Commission,* 259 Conn. 402, 788 A.2d 1239 (2002), in which our Supreme Court further explained that the aggrievement principle set forth in *Sheridan* v. *Planning Board,* 159 Conn. 1, 266 A.2d 396 (1969), "stands for the proposition that a prospective, personal and legal interest in the subject matter of a zoning commission's decision does not satisfy the first prong of the test for classical aggrievement." *Harris* v. *Zoning Commission,* supra, 414 n.12.

In the present case, the parcel of land subject to the commission's decision does not float over the entire

community but has distinct geographical boundaries. The text amendment creates a new zoning district, which the plaintiffs refer to as the "Route 262 Planned Commercial District (B-PCD262)" for specific property bounded by Route 262, Turkey Brook, Echo Lake Road, Connecticut Route 8, and Frost Bridge Road in Watertown. The text amendment defines the specific geographical area to which it relates. The newly created B-PCD262 zoning district permits commercial uses in an IR-80 industrial zone. The text amendment applies to the otherwise industrially zoned area, and the commission identified the area "Route 262, Turkey Brook, Echo Lake Road, Route 8, and Frost Bridge Road" as the boundaries of the new zoning district in § 36.2 of the regulations titled "Overlay District Location." The parties do not dispute that the area has definite bounds. The area described is bounded on all sides and consists of only approximately 150 acres. Because this particular 150 acre area is affected by the commission's decision, the area affected has descended to a particular part of the town under the language set forth in *Schwartz*. We conclude that the text amendment sufficiently defined the specific, limited geographic area to which the text amendment related, and, therefore, the new zoning district cannot be considered a floating zone.

We next address the landed plaintiff's claim that he is statutorily aggrieved because he owns land that abuts or is within a radius of 100 feet of any portion of the land of the particular area to be affected by this newly created zoning district that permits certain commercial uses in an otherwise industrially zoned area. Section 8-8 (a) (1), which governs planning and zoning commission appeals, allows an appeal to be brought by an " 'aggrieved person' . . . [and] includes any person owning land which abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." A person owning property within

the designated distance of the land involved in the agency's decision is called "statutorily aggrieved" and has standing to appeal.

In *Light Rigging Co.* v. *Dept. of Public Utility Control*, 219 Conn. 168, 173, 592 A.2d 386 (1991), our Supreme Court held that classical aggrievement in an administrative appeal is established if there is a possibility, as distinguished from a certainty, that some legally protected interest has been affected by the action of a zoning authority. Statutory aggrievement, as opposed to classical aggrievement, occurs when a landowner owns land "that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board"; General Statutes § 8-8 (a) (1); and the landowner appeals to the Superior Court. Citing *Harris* v. *Zoning Commission*, supra, 259 Conn. 402, the trial court held that the landed plaintiff had "not shown any aggrievement." However, in *Harris*, our Supreme Court dealt with classical aggrievement, not statutory aggrievement. See *Harris* v. *Zoning Commission*, supra, 413–15 and 415 n.15. Classical aggrievement requires a twofold showing. "[F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) Id., 410. Neither of these prongs must be proved if a plaintiff is statutorily aggrieved under § 8-8 (a) (1).

In the present case, the trial court dismissed the case of all plaintiffs because they were not aggrieved. In the case of the landed plaintiff, the court dismissed his case for lack of aggrievement although it found that he owned land that abuts or is within a radius of 100 feet

of the bounds the commission established as affected by its text amendment to the regulations permitting commercial uses in that area of the municipality, which, prior to the amendment, allowed only industrial uses.

The trial court specifically found that "[i]n the present case, the landed plaintiff owns land in an area, which the commission added an overlay zone."[5] This finding is dispositive of our resolution of this claim. "Persons whose land falls within the statutory category need not prove aggrievement independent of their status of owners of property bearing the necessary relationship to property involved in the agency's action." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2007) § 32.4, p. 147. Our decision in *Cole* v. *Planning & Zoning Commission*, 30 Conn. App. 511, 620 A.2d 1324 (1993), is analogous to the present case. In *Cole*, we held that pursuant to § 8-8 (a) (1), the plaintiffs were aggrieved parties by virtue of their ownership of land within the zone to which the amendment at issue pertained.[6] Id., 514–15. The plaintiffs had appealed from

---

[5] See footnote 4 of this opinion.

[6] See also *Stauton* v. *Planning & Zoning Commission*, 271 Conn. 152, 160, 856 A.2d 400 (2004) ("we must interpret the phrase 'land involved' in § 8-8 (a) (1) in light of the legislature's intent to relieve a narrow class of landowners who are presumptively affected by the zoning commission's adverse decision because of their close proximity to a *projected zoning action* from the arduous burden of proving classical aggrievement" [emphasis added]); *Lewis* v. *Planning & Zoning Commission*, 62 Conn. App. 284, 286, 296, 771 A.2d 167 (2001) (by virtue of statute defining aggrieved person to include "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board," owners of 277 acres of town's 4121 acres of subdividable land were statutorily aggrieved parties entitled to appeal decision of town planning and zoning commission to amend two sections of town subdivision regulations governing lot area calculations, to increase required lot size in cases in which ponds, lakes, or slopes were present); *Swiconek* v. *Zoning Board of Appeals*, 51 Conn. Sup. 190, 978 A.2d 1174 (2009) (site plan submitted with zoning variance application showed that landowner's and trust's properties were abutting, and thus trust's property fell within zone of statutory aggrievement as required for standing to contest grant of variance).

a decision of the Cornwall planning and zoning commission that adopted an amendment to its regulations permitting the operation of a commercial sawmill in certain residential zones. Id., 512. The plaintiffs in *Cole* owned land within 100 feet of the property on which a permanent sawmill operation was intended to be established in accordance with the new regulation. Id., 515. The court found that the plaintiffs were aggrieved parties by virtue of their ownership of land within the zone to which the amendment pertained. Id. Their appeal, like the appeal in the present case, was from the adoption of the amendment to the regulations, not from the issuances of a permit and site plan approval for the actual use. Id., 511. The plaintiffs in *Cole* alleged that "[a] permanent sawmill [operation] was not permitted on said property under the original regulation but was permitted under the amended regulation." Id., 515. Similarly, the text amendment in the present case amended the existing bounded parcel of IR-80 industrial zoned property to permit certain new uses, particularly, "high quality retail and office development," and to exclude other certain enumerated commercial uses, e.g., Laundromats. In both cases, additional limitations to the text amendment were anticipated to be set forth in the permit process. In *Cole* and the present case, the use was prospective but then was permitted by the new regulation. We conclude, therefore, that the text amendment created a defined, bounded zoning district and that the landed plaintiff is statutorily aggrieved under § 8-8 (a) (1) because his property falls within the particular zone to which the text amendment pertained.

The commission also argues that the landed plaintiff is not aggrieved because there has not been any change to the zoning map, nor have any zoning map change applications been filed. Additionally, the commission argues that further steps in the application process must

be taken, such as submission and approval of a conceptual site plan filed in conjunction with a zoning map application, before the text amendment touches or impacts any parcel of land. Whether the zoning map has been changed or further steps in the application process will be taken is immaterial to our determination that the landed plaintiff is statutorily aggrieved. The area is no less bounded than if it were delineated on the zoning map. The landed plaintiff, as an owner of land within the newly created, bounded zoning district, the area to which the text amendment pertains, is an aggrieved party by virtue of § 8-8 (a) (1). See *Cole* v. *Planning & Zoning Commission*, supra, 30 Conn. App. 511.

The commission also argues that the landed plaintiff is not aggrieved because a person owning land within the B-PCD262 zone is not required to join or to have his or her property included in the amendment to the zoning map. Whether a landowner may choose to have his or her property not included in the amendment to the zoning map, a future step in the process, is immaterial to our conclusion because the landed plaintiff is already statutorily aggrieved by virtue of owning land within the newly created B-PCD262 zone. The commission's argument erroneously presumes that the new zoning district is a floating zone. For the reasons stated earlier in this opinion, the newly created zoning district is not a floating zone because it has defined, definite bounds.

The text amendment created the new B-PCD262 zone, a new zoning district with specifically defined, definite bounds, which permits development that previously was not permitted. In its brief, the commission recognizes that the new text amendment permits development that was not permitted at all in the preexisting zone. Even if the landed plaintiff were somehow able to opt out of the amendment to the zoning map, he is no less statutorily aggrieved because his land still "abuts

or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a) (1). The landed plaintiff's decision to opt out does not affect whether his neighbors decide to opt out and, consequently, whether the lands of such adjoining property owners are still subject to the text amendment. The landed plaintiff, therefore, is no less of an abutter of some adjoining property owner who did not decide to opt out. "Statutory aggrievement exists by legislative fiat, which grants appellants standing by virtue of a particular legislation, rather than by judicial analysis of the particular facts of the case." (Internal quotation marks omitted.) *Cole* v. *Planning & Zoning Commission*, supra, 30 Conn. App. 514–15. The landed plaintiff only had to prove that he owns land that abuts or is within a radius of 100 feet of any portion of the land involved in the decision of the commission to have standing to appeal by legislative fiat. It was not necessary for the landed plaintiff to prove any specific aggrievement.

The text amendment created a defined, bounded zoning district, and the landed plaintiff is statutorily aggrieved because his property falls within the particular zone to which the text amendment pertained. We conclude, therefore, that the trial court improperly dismissed the landed plaintiff's case and reverse the judgment in part, with direction to restore his case to the docket.

II

We next turn to the question as to whether the trial court properly dismissed the claims of the intervening plaintiffs.

The intervening plaintiffs claim that the court erred in holding that they did not have standing to challenge the conduct of the commission in adopting the text amendment. Specifically, the intervening plaintiffs

argue that the commission illegally failed to follow regulations requiring it to submit an environmental impact statement in connection with the text amendment.

"We begin with some well settled principles regarding standing and its aggrievement component, as recently reaffirmed in *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 287–89, 933 A.2d 256 (2007). If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Pond View, LLC* v. *Planning & Zoning Commission*, 288 Conn. 143, 155, 953 A.2d 1 (2008).

The intervening plaintiffs intervened under § 22a-19 (a), which provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." General Statutes § 22a-19 (a).

On the basis of this expansive language, our Supreme Court previously has concluded that § 22a-19 confers standing on a broad range of individuals, entities and

government agencies to intervene in both administrative proceedings and subsequent "judicial review" thereof on appeal. See *AvalonBay Communities, Inc. v. Zoning Commission*, 280 Conn. 405, 413–14, 908 A.2d 1033 (2006); *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, 212 Conn. 727, 733–34, 563 A.2d 1347 (1989). An intervenor's standing pursuant to § 22a-19 strictly is limited to challenging only environmental issues covered by the statute, and "only those environmental concerns that are within the jurisdiction of the particular administrative agency conducting the proceeding into which the party seeks to intervene." *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 148, 788 A.2d 1158 (2002).

In *Pond View, LLC* v. *Planning & Zoning Commission*, supra, 288 Conn. 143, our Supreme Court reiterated its prior holding that intervening environmental plaintiffs have standing to intervene on environmental issues only. Id., 157. The court held that a person seeking to intervene under § 22a-19 (a) must plead issues to be decided that fall within the ambit of the statute. Id., 159. In the present case, the intervening plaintiffs set out numerous claimed irregularities in the manner in which the commission proceeded. These are set forth in paragraph 24 (a) through (j), inclusive, of the complaint.[7] All of these subparagraphs set out procedural

---

[7] Paragraph 24 of the complaint states: "The plaintiffs/appellants . . . are also aggrieved because the action of the Commission in approving the Amendment was illegal, arbitrary, capricious, and in abuse of its discretion, and in violation of its own regulations and applicable state statutes in that: (a) The commission failed or refused to follow its own Regulations (b) Notice was defective, misleading, and incomplete; (c) the Commission revised the proposed Amendment after the close of the Public Hearing and did not re-expose the materially changed Amendment to public hearing as required by law; (d) the [commission] failed to follow the mandates of the Connecticut General Statutes; (e) the Commission failed to consider or make requisite findings relating to the allegations of the Petitioning intervenors; (f) The Commission voted on an Amendment without defensible standards and without standards protective of water quality, erosion and flooding; (g) The conduct of the Public Hearing was fundamentally unfair; (h) A Commissioner

irregularities. Subparagraph (f) comes closest to the required environmental threshold in its claim that the commission voted on the amendment without "defensible standards and without standards protective of water quality, erosion and flooding." However, even paragraph 24 (f) of the complaint is really a claim of lack of standards in the legislative adoption, thus making it "illegal, arbitrary, capricious, and in abuse of its discretion, and in violation of its own regulations and applicable state statutes." The *Pond View, LLC,* court made it clear that the issues that the intervenors ask to be decided must be those properly within the scope of the statute. *Pond View, LLC* v. *Planning & Zoning Commission,* supra, 159. Claimed noncompliance with zoning statutes or zoning regulations are not within that scope. Allegations of noncompliance with procedural requirements do not give rise to standing to challenge the commission's action pursuant to § 22a-19 (a). See *Fort Trumbull Conservancy, LLC* v. *New London,* supra, 282 Conn. 797–98 (plaintiff's claim that defendants failed to follow certain procedural requirements in adopting development plan insufficient to establish standing under General Statutes § 22a-16).

The intervening plaintiffs also argue that they have standing to appeal under § 22a-19 because of the reasonable likelihood of environmental harm as a result of the text amendment to the zoning regulations. In support, they argue that their allegations are distinguishable from those that undermined the plaintiffs' case in *Pond View, LLC,* a case on which the trial court relied in dismissing their complaint. We disagree with the intervening plaintiffs.

who recused himself from the proceedings remained in the hearing room commenting, clapping, and otherwise participating in the proceedings; (i) The Commission approved an Application that materially failed to demonstrate consistency with the Plan of Conservation and Development; (j) The decision of the [commission] is not supported by substantial evidence and does not find a basis in fact or law."

In paragraph 22 of their complaint, the intervening plaintiffs allege various environmental issues, including poor water and air quality, that may arise as a result of the amendment to the zoning regulations.[8] Relying on our Supreme Court's holding in *Pond View, LLC*, the trial court found that the conduct of the commission, construed even in the light most favorable to the plaintiffs, cannot be found to be harmful to the environment because the creation of an overlay zone is not conduct that causes environmental harm. "The cases wherein we have permitted standing under § 22a-19 have involved circumstances in which the *conduct* at issue in the application before this court allegedly would cause direct harm to the environment. See, e.g., *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*,

---

[8] Paragraph 22 of the complaint states: "The plaintiffs/appellants . . . are aggrieved by the decision of the [commission] because they were all recognized as intervening petitioners pursuant to the provisions of . . . § 22a-19 (a) by the Commission during the Public Hearing upon their allegations of reasonable likelihood of unreasonable pollution to natural resources within the jurisdiction of the Commission as a result of the amendment to the Zoning Regulations because: (a) The combination of environmentally sensitive resources, liberal provisions on the amount of impervious cover permitted (up to 75%) and inadequately-defined Special Permit process and criteria leaves the subject property open to gross development that can adversely affect water quality [through] erosion and inadequate storm water management directives and create down-stream flooding without meaningful review; (b) Traffic volumes associated with the uncontrolled scale of permitted uses will create dangerous traffic conditions, poor air quality and introduce pollutants in runoff adding non-point source pollution to the likely unreasonable impacts of permitted development in this environmentally sensitive location. The traffic will unavoidably and chronically deposit polluting residues of more than 17 known contaminants on the roads, driveways, and parking surfaces including, but not limited to asbestos and copper, chloride, biochemical oxygen demand chromium, zinc, volatile solids, rubber, grease, and the like; (c) Pollution from automobile tailpipes increases the risk of asthma, lung cancer, leukemia and other ailments, particularly in people who live near busy roads. The proposed Overlay District relieves an applicant from providing mitigation for increased congestion as a result of development, expressly counter to the Commission's mandate under Connecticut law, [General Statutes] § 8-2, that is, 'to lessen congestion in the streets.' "

supra, 212 Conn. 730–33 (intervention pursuant to § 22a-19 on ground that proposed development of land would result in the irreversible elimination of major portions of prime agricultural land was proper but agricultural land ultimately determined not natural resource within meaning of statute . . .); *Mystic Marinelife Aquarium, Inc.* v. *Gill,* [175 Conn. 483, 485, 490, 400 A.2d 726 (1978)] (appeal from approval of permit to construct floating dock and other structures along river that would harm environment); see also *Fort Trumbull Conservancy, LLC* v. *New London,* [supra, 282 Conn. 805–808] (concluding [1] that development plan itself constituted conduct that could cause harm to environment within the meaning of § 22a-16, and [2] that allegation of violation of technical or procedural requirements does not give rise to claim of unreasonable pollution for purposes of standing under § 22a-16)."[9] (Emphasis in original;

[9] The pleadings and circumstances in *Red Hill Coalition, Inc.,* and *Mystic Marinelife Aquarium, Inc.,* allege direct harm to the environment and are distinguishable from the present case. In *Red Hill Coalition, Inc.,* the pleadings alleged direct harm to agricultural land which was the subject of a favorable report of the Glastonbury conservation commission. *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission,* supra, 212 Conn. 730. Further, the commissioner of agriculture and the commissioner of environmental protection were granted permission to file a brief as amici curiae in support of the plaintiffs. Id., 729 n.3. The trial court concluded that because the planning and zoning commission considered environmental issues by reviewing the conservation commission's report, the intervention in the zoning commission hearing was appropriate under § 22a-19 (a). Id., 733 n.7. The intervenors in the present case did not raise such issues. In *Mystic Marinelife Aquarium, Inc.,* the § 22a-19 intervenors appealed from a decision of the commissioner of the department of environmental protection granting a permit to erect a floating dock directly in the Mystic River. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 175 Conn. 483. The intervenors pleaded direct environmental harm under General Statutes § 25-7b, which "places upon the commissioner the duty of regulation of the erection of structures in tidal, coastal or navigable waters with regard to be had to certain considerations set out in that statute." Id., 495. Again, the intervenors in the present case did not raise such an issue. Instead, the intervening plaintiffs argue that the commission illegally failed to follow regulations requiring it to submit an environmental impact statement in connection with the text amendment.

internal quotation marks omitted.) *Pond View, LLC* v. *Planning & Zoning Commission,* supra, 288 Conn. 159–60. In *Pond View, LLC,* the commission argued, and the court agreed, that a zone change itself did not involve " 'conduct' " within the meaning of § 22a-19 that could be analyzed for its unreasonable pollution effects on air, water or other natural resources. Id., 154–55.

The intervening plaintiffs distinguish the intervenors' allegations in *Pond View, LLC,* on the ground that they were not environmental.[10] It is not necessary for us to address this argument because the distinction, if any, is immaterial to our conclusion. The inclusion of environmental issues in the complaint does not per se provide the intervening plaintiffs standing under § 22a-19 or allow them to avoid application of our court's holding in *Pond View, LLC.* The language in *Pond View, LLC,* clearly states that a zone change is a legislative action which does not directly threaten the environment. Id., 157, 160–61. "[A]ny environmental harm to the 'air, water or other natural resources of the state' necessarily would result from the [commission's] conduct in actually developing the property, not from the zone change . . . ." Id., 160–61. The court in *Pond View, LLC,* further stated that the proper forum to challenge alleged environmental harm and related procedural issues under § 22a-19 was in an appeal from the commission's decision granting a special exception permit or, more specifically, approving the site plan. Id., 161. "It is this application that actually involves the 'conduct' . . . that might lead to adverse environmental impacts that standing pursuant to § 22a-19 is meant to guard against."

---

[10] In *Pond View, LLC,* the intervenors alleged that they had standing to bring their claims under § 22a-19 because concerns related to the preservation of natural resources underlying the town's plan of conservation and development provided a basis for the commission's denial of the proposed zone change and thus bring the issues in the appeal within the scope of that statute. *Pond View, LLC* v. *Planning & Zoning Commission,* supra, 288 Conn. 154–55.

Id. For these reasons, as to the intervening plaintiffs, we affirm the judgment of the trial court.

We conclude that the trial court improperly dismissed the landed plaintiff's case and reverse the judgment in part, with direction to restore the landed plaintiff's case to the docket. As to the remaining plaintiffs, we affirm the judgment of the trial court dismissing their intervening complaints.

In this opinion the other judges concurred.