CHRISTOPHER STEFANONI ET AL. *v.* DEPARTMENT OF ECONOMIC AND COMMUNITY DEVELOPMENT ET AL.
(AC 34809)

DiPentima, C. J., and Sheldon and Flynn, Js.

Argued January 17—officially released April 30, 2013

*Margaret Stefanoni,* pro se, with whom was *Christopher Stefanoni,* pro se, the appellants (plaintiffs).

*Paul K. Pernerewski,* assistant attorney general, with whom, on the brief, was *George Jepsen,* attorney general, for the appellees (named defendant et al.).

*John J. Louizos,* with whom were *John Wayne Fox* and, on the brief, *Patricia M. Gaug,* for the appellee (defendant town of Darien).

*Opinion*

FLYNN, J. Where a municipality has adopted the provisions of chapter 8 of the General Statutes, it may exercise the zoning powers granted by that chapter through the municipality's zoning commissions, and any proposed use within the municipality must be in conformance with the municipality's zoning regulations. Although General Statutes § 8-8[1] sets forth the general appeals procedure for zoning matters, our legislature implemented General Statutes § 8-30g to provide a distinct procedure for affordable housing land use appeals. If the municipality, however, satisfies the requirements set forth in § 8-30g (*l*),[2] the commissioner of economic

---

[1] General Statutes § 8-8 provides in relevant part: "(b) . . . any person aggrieved by any decision of a board . . . may take an appeal to the superior court . . . ."

[2] General Statutes § 8-30g (*l*) provides in relevant part: "(4) (A) The commissioner shall issue a certificate of affordable housing project completion for the purposes of this subsection upon finding that there has been completed within the municipality one or more affordable housing developments which create housing unit-equivalent points equal to the greater of two per cent of all dwelling units in the municipality, as reported in the most recent United States decennial census, or seventy-five housing unit-equivalent points. . . ."

and community development (commissioner) may issue a certificate of affordable housing completion (moratorium certificate), which suspends the affordable housing land use appeal process in the municipality.[3]

The plaintiffs, Christopher Stefanoni and Margaret Stefanoni, appeal from the judgment of the trial court rendered after an evidentiary hearing, dismissing the plaintiffs' action for a declaratory judgment because the plaintiffs lacked standing. The plaintiffs brought the trial court action, pursuant to General Statutes § 4-175,[4] after the defendant, commissioner of the defendant department of economic and community development (department),[5] denied the plaintiffs' request for a declaratory ruling, made pursuant to General Statutes § 4-176.[6] On appeal, the plaintiffs claim that the trial court

[3] General Statutes § 8-30g (*l*) provides in relevant part: "(1) Notwithstanding the provisions of subsections (a) to (j), inclusive, of this section, the affordable housing appeals procedure established under this section shall not be applicable to an affordable housing application filed with a commission during a moratorium, which shall be the four-year period after (A) a certification of affordable housing project completion issued by the commissioner is published in the Connecticut Law Journal, or (B) after notice of a provisional approval is published pursuant to subdivision (4) of this subsection. . . ."

[4] General Statutes § 4-175 provides in relevant part: "(a) If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff and if an agency (1) does not take an action required by subdivision (1), (2) or (3) of subsection (e) of section 4-176, within sixty days of the filing of a petition for a declaratory ruling, (2) decides not to issue a declaratory ruling under subdivision (4) or (5) of subsection (e) of said section 4-176, or (3) is deemed to have decided not to issue a declaratory ruling under subsection (i) of said section 4-176, the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. The agency shall be made a party to the action. . . ."

[5] The plaintiffs also named the town of Darien as a defendant, which is also a party to this appeal.

[6] General Statutes § 4-176 provides in relevant part: "(a) Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability

erred in concluding that the plaintiffs were neither classically nor statutorily aggrieved and that they, therefore, lacked standing.[7] We affirm the judgment of the trial court.

The following undisputed facts, as found by the trial court, and procedural history are relevant to this appeal.

The plaintiffs are affordable housing developers who previously have attempted to develop affordable housing in the defendant town of Darien (town). In May, 2010, the town applied to the department for a moratorium certificate pursuant to § 8-30g (*l*). The effect of this moratorium certificate is that it grants the town a four year moratorium, during which time the appeals process provided by § 8-30g will not be available to affordable housing applicants who claim to have been aggrieved by a ruling of the town planning and zoning commission. The department granted the application and issued the town the moratorium certificate, which effected the moratorium beginning on November 2, 2010.

On March 28, 2011, the plaintiffs submitted a petition to the department for a declaratory ruling, pursuant to § 4-176, challenging the grant of the moratorium certificate. On April 28, 2011, the commissioner, in a written decision, denied the petition.

Almost two months later, on June 22, 2011, the plaintiffs filed a complaint in the Superior Court seeking a declaratory judgment, under § 4-175, overturning the department's decision to grant the moratorium certificate and ordering the department and commissioner to

to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency. . . ."

[7] The defendants on appeal also raised an alternate ground upon which the court's judgment could be affirmed, namely that the plaintiffs' claim was not ripe for adjudication.

revoke it. The plaintiffs then filed an amended complaint on August 4, 2011.[8] The plaintiffs' complaint was amended to reflect their submission of their application to the town planning and zoning commission for the creation of an affordable housing floating zone (floating zone creation application) on August 4, 2011. The floating zone creation application states that the floating zone would "be applied to all properties in Darien including the [plaintiffs'] property at 149 Nearwater Lane." On January 17, 2012, the town planning and zoning commission issued a resolution denying the plaintiffs' floating zone creation application.[9]

After an evidentiary hearing on April 4, 2012, the court, in its memorandum of decision, dated June 19, 2012, and in its corresponding judgment, dismissed the plaintiffs' declaratory judgment action on the ground

---

[8] The only change between the plaintiffs' original complaint and the plaintiffs' amended complaint was in paragraph eight. The original paragraph eight read as follows: "The [p]laintiffs presently own additional property in the [town] and will be submitting within the next few weeks an application to the Darien [p]lanning and [z]oning [c]ommission for a zone change for their property and an amendment to the Darien [z]oning [r]egulations to allow the construction of affordable housing as defined by [§] 8-30g on the site. The current moratorium interferes with and impairs the legal rights and privileges of the [p]laintiffs as it prevents the [p]laintiffs from availing themselves of the appeals procedure afforded by [§] 8-30g for their affordable housing application."

The amended paragraph eight read as follows: "On August 4, 2011, the [p]laintiffs submitted an application to the Darien [p]lanning and [z]oning [c]ommission to amend the [z]oning [r]egulations to allow for a floating affordable housing zone that will be applicable to all lots in the [town] to allow the construction of affordable housing as defined by and in accordance with [§] 8-30g. As the zone applies to all lots in Darien, it includes the [p]laintiffs' property at 149 Nearwater Lane. The current moratorium interferes with and impairs the legal rights and privileges of the [p]laintiffs as it prevents the [p]laintiffs from availing themselves of the appeals procedure afforded by [§] 8-30g."

[9] The plaintiffs have appealed this denial and that appeal is pending before the trial court. See *Stefanoni* v. *Planning & Zoning Commission*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-12-5013828-S (filed February 23, 2012).

that the plaintiffs lacked standing to commence the action. This appeal by the plaintiffs followed.

On appeal, the plaintiffs claim that the court erroneously concluded that the plaintiffs were neither classically nor statutorily aggrieved and, therefore, lacked standing, rendering the court without subject matter jurisdiction to hear the action. We disagree.

We begin by setting forth our standard of review and the principles that guide our analysis. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) *Burton* v. *Dominion Nuclear Connecticut, Inc.*, 300 Conn. 542, 550, 23 A.3d 1176 (2011).

I

We first address whether the plaintiffs were classically aggrieved. Classical aggrievement requires satisfaction of a two-pronged test. Prong one "requires a showing that the plaintiffs have a specific, personal and

legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of the community as a whole" and prong two requires "that the plaintiffs were specially and injuriously affected in their property or other legal rights." (Internal quotation marks omitted.) *Schwartz* v. *Town Plan & Zoning Commission*, 168 Conn. 20, 25, 357 A.2d 495 (1975). We conclude that the plaintiffs fail to satisfy both prongs of the test for classical aggrievement.

A

In order to satisfy the first prong of the test for classical aggrievement, the plaintiffs must show first that they have a specific, personal and legal interest in the subject matter of the declaratory judgment, not just a general interest that concerns the community as a whole. The plaintiffs rely on their floating zone creation application as establishing their specific, personal and legal interest in seeking a declaratory judgment regarding the moratorium. We agree with the trial court that this reliance, however, is misplaced.

The moratorium suspends the affordable housing appeals procedure for affordable housing applications filed with the commission during the moratorium period. In order for the plaintiffs to have a specific, personal and legal interest in seeking a declaratory judgment regarding the moratorium, they would need to have an affordable housing application filed with the commission that would not be subject to the appeals procedure due to the moratorium. The only application that the plaintiffs filed after the moratorium's effective date of November 2, 2010, was the floating zone creation application. This floating zone creation application must qualify as an "affordable housing application" under § 8-30g in order to be affected by the moratorium. Section 8-30g (a) (2) provides: " 'Affordable housing

application' means any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing . . . ." An " '[a]ffordable housing development' " is defined under § 8-30g (a) (1) as: "(A) assisted housing,[10] or (B) a set-aside development . . . ."[11]

Our Supreme Court in *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 509, 636 A.2d 1342 (1994), construed the definition of an affordable housing application to include "every type of application filed with a commission in connection with an affordable housing proposal." Our Supreme Court further elucidated this standard in *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 141, 653 A.2d 798 (1995), when it held "that § 8-30g does not independently require an affordable housing developer to submit to the commission, at the time of his initial application in connection with an affordable housing development, any more detailed 'plans' than an applicant who requests a zone change for a purpose other than affordable housing." The *Kaufman* court quoted State Senator Richard Blumenthal on the Senate floor, who remarked that "it is important to understand that these decisions involve *specific* projects on *particular*

---

[10] General Statutes § 8-30g (a) (3) defines " '[a]ssisted housing' " as "housing which is receiving, or will receive, financial assistance under any governmental program for the construction or substantial rehabilitation of low and moderate income housing, and any housing occupied by persons receiving rental assistance . . . ."

[11] General Statutes § 8-30g (a) (6) provides in relevant part: " 'Set-aside development' means a development in which not less than thirty per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that, for at least forty years after the initial occupation of the proposed development, such dwelling units shall be sold or rented at, or below, prices which will preserve the units as housing for which persons and families pay thirty per cent or less of their annual income, where such income is less than or equal to eighty per cent of the median income. . . ."

*pieces* of land and do not provide for any kind of general zoning override." (Emphasis added; internal quotation marks omitted.) Id., 138.

The plaintiffs' floating zone creation application proposed an amendment to the town zoning regulations for the creation of an affordable housing floating zone that "[could] be applied to all properties in Darien including the [plaintiffs'] property at 149 Nearwater Lane." In addition to the proposed regulation text, the plaintiffs attached a single page "conceptual site plan" to this application, featuring their property, 149 Nearwater Lane "per [s]ection 1112.4 [of the Darien zoning regulations]."[12]

In order to determine whether the plaintiffs' floating zone creation application qualified as an "affordable housing application" under § 8-30g, the plaintiffs' floating zone creation application would have to be "in connection with an affordable housing proposal." The application in *West Hartford Interfaith Coalition, Inc.*, requested "(1) a zone change from an R-13 single-family zone to an RM-4 multifamily zone; and (2) a special development district designation" for an undeveloped property at 2561 Albany Avenue, West Hartford. *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 503. The application, designed to meet the affordability requirements of § 8-30g for an "affordable housing development," sought approval for ten affordable housing units on the property. Id., 500.

---

[12] Section 1112 of the Darien zoning regulations addresses applications for amendments to the zoning regulations or the zoning map. Specifically § 1112.2 of the Darien zoning regulations details the application for amendments to the zoning regulations and provides in relevant part: "All proceedings to amend these [r]egulations, including any change in punctuation or wording, shall be instituted by written application, in [ten] copies, to the [c]ommission setting forth the specific provisions to be amended and the proposed language thereof. Applications shall be signed by the party proposing the amendment or by the agent for such party. Reasons for the proposed amendment shall also be stated in the application."

*Kaufman* involved an application where the plaintiff "sought to change the zoning of 27.4 acres of his Danbury property to an 'RA-8' classification . . . ." *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 127. Both of these applications clearly were in connection with an affordable housing development proposed by the plaintiffs in those cases because they both were filed in connection with the specific property that was to be developed and were found to meet the affordability requirement. See id., 139 (*Kaufman* court concluded that developer proposed affordable housing and that this "proposal [was] a specific project on a particular piece of land"); see also id., 144–47; *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 512–13, 523–25.

In contrast, the plaintiffs' floating zone creation application was for the creation of an affordable housing floating zone over the *entire* town. "By definition, a floating zone does not apply to a specifically described parcel of land. . . . A floating zone differs from the traditional Euclidean zone [which has definite bounds] in that it has no defined boundaries and is said to float over the entire area where it may eventually be established." (Citation omitted; internal quotation marks omitted.) *Douglas* v. *Planning & Zoning Commission*, 127 Conn. App. 87, 94, 13 A.3d 669 (2011). The plaintiffs' application was for the *creation* of a floating zone for the whole town, not a zone change for a specific parcel, as were the applications in *West Hartford Interfaith Coalition, Inc.*, and *Kaufman.*

The plaintiffs' addition of a single page "conceptual site plan," featuring their property, 149 Nearwater Lane "per [s]ection 1112.4" is not enough to transform the floating zone creation application into an affordable housing application.[13] In order for the floating zone creation application to be an affordable housing applica-

---

[13] Darien zoning regulation, § 1112.4, which the plaintiffs cite as their reason for attaching their "conceptual site plan," states in relevant part: "If

tion, it must, in accordance with § 8-30g (a) (2), be in connection with an affordable housing development as defined by § 8-30g (a) (1), either assisted housing or a set-aside development. "To satisfy the definition of 'assisted housing,' § 8-30g (a) (3) merely required the plaintiff to demonstrate that either it received or it would be receiving financial assistance under any governmental program for the construction of its affordable housing development." *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 523. In *West Hartford Interfaith Coalition, Inc.*, our Supreme Court also held that indication of intent to use language, restrictions and covenants, running with the land, similar to a declaration of cooperative that the *Interfaith* plaintiff supplied to the trial court was sufficient to satisfy the definition of an "affordable housing development" under § 8-30g (a) (1). Id., 524–25.

In the present case, the plaintiffs' floating zone creation application and its accompanying single page conceptual site plan fail to satisfy either definitional requirement to be considered an " 'affordable housing development' " under § 8-30g (a) (2). The plaintiffs' conceptual site plan failed to demonstrate that it received or should be receiving financial assistance under any governmental program for its development. Additionally, the plaintiffs' conceptual site plan did not indicate an intention to restrict the deed language for this parcel in accordance with the definitional language in § 8-30g (a) (6). Although the plaintiffs' floating zone creation application vaguely references such definitional requirements by requiring compliance with § 8-30g, the

an amendment of the [z]oning [m]ap and/or [r]egulations is proposed to accommodate a specific development or type of development on a single parcel, or small group of parcels or area of less than [five] acres, then, the applicant shall provide with the application to the [c]ommission, sufficient and detailed information . . . to illustrate how the likely development will be workable and safe, in the manner and in the location as proposed in the amendment application."

application never evinces how the 149 Nearwater Lane conceptual site plan satisfies the alternative definitions required by § 8-30g (a), namely a governmental subsidy or deed restricted sales or rental prices, such that the floating zone creation application would be in connection with an affordable housing development.

The attachment of the "conceptual site plan" in connection with the proposed creation of an affordable housing floating zone does not transform the plaintiffs' floating zone creation application into an affordable housing application made in connection with an affordable housing development because the supposed connection is too attenuated. Cf. *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 506 (affordable housing application consisted of "two distinct but interdependent actions," namely zone change and special development district designation). In the present case, the plaintiffs do not need a townwide affordable housing floating zone created and descended in order to build affordable housing on their property. Section 8-30g already empowers any property owner, including the plaintiffs, to come before the commission with an application for an affordable housing project to be built on their land. Even if the proposed affordable housing floating zone were approved by the commission, the attachment of a single page conceptual site plan would not be enough to cause such a floating zone to descend onto the plaintiffs' land. The proposed floating zone in the plaintiffs' floating zone creation application requires that "[a]ffordable housing which fully satisfies the requirements of . . . [§] 8-30g must be part of any housing proposal submitted for approval within this zone," and, as discussed previously, this site plan fails to satisfy the alternative definitions of an affordable housing development. Thus, the attachment of a one page conceptual site plan regarding the plaintiffs' property, in satisfaction of an inapplicable zoning

section, is not enough to connect this floating zone creation application with an affordable housing development. The plaintiffs' floating zone creation application is not an affordable housing application, and as such, § 8-30g, including the challenged moratorium, which affects only affordable housing applications, does not apply. The plaintiffs, therefore, do not have a specific, personal and legal interest in a declaratory judgment regarding the moratorium.

In short, the plaintiffs have not met the first prong of the classical aggrievement test because their floating zone creation application applies to all properties within the town, not just to the plaintiffs' property. The plaintiffs, therefore, lack the specific, personal and legal interest in the subject matter distinct from all other properties within the town. Their attachment of a conceptual site plan regarding their property to their floating zone application does not place them in any better position. This is so because they did not set forth that this site would be either assisted housing receiving financial assistance from a governmental program, in accordance with the § 8-30g (a) (3) definition, or a set-aside development containing deed restrictions as to allowable affordable sales or rental prices, as set forth in § 8-30g (a) (6). The plaintiffs, therefore, do not satisfy the first prong of classical aggrievement.

B

The plaintiffs also fail to satisfy the second prong of the test for classical aggrievement. The second prong requires "that the plaintiffs were specially and injuriously affected in their property or other legal rights." (Internal quotation marks omitted.) *Schwartz* v. *Town Plan & Zoning Commission*, supra, 168 Conn. 25. In the present case, the second prong would be satisfied if the plaintiffs suffered a specific injury to their rights

from the moratorium suspending the affordable housing appeals procedure under § 8-30g.

For the reasons stated in the discussion of the first prong of classical aggrievement, the plaintiffs' zone creation for a floating zone over the whole town is not an affordable housing application within the purview of § 8-30g. Consequently, any action taken on the floating zone creation application by the town planning and zoning commission would not be subject to the affordable housing appeals procedure under § 8-30g. Because the floating zone creation application would not be subject to the § 8-30g appeals procedure that was suspended by the moratorium, the plaintiffs were not specifically and injuriously affected in their rights by the moratorium. The plaintiffs are currently appealing the denial of their floating zone creation application in Superior Court, but not under § 8-30g. See *Stefanoni* v. *Planning & Zoning Commission*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-12-5013828-S (filed February 23, 2012). The plaintiffs, therefore, were not specifically and injuriously affected in their rights by the moratorium, as is required under prong two of the test for classical aggrievement. Because the plaintiffs failed to satisfy both prongs of the classical aggrievement test, we conclude the court did not err in concluding that the plaintiffs were not classically aggrieved.

II

We next address whether the plaintiffs proved that they were statutorily aggrieved. "[W]here a statute or court rule sets prerequisites to suit by a particular plaintiff, a plaintiff not meeting the statutory criteria lacks standing and the court is said to lack jurisdiction over the case." (Internal quotation marks omitted.) *Pinchbeck* v. *Dept. of Public Health*, 65 Conn. App. 201, 206, 782 A.2d 242, cert. denied, 258 Conn. 928, 783 A.2d 1029

(2001). "Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 288, 933 A.2d 256 (2007). "It is settled that the existence of statutory standing depends on 'whether the interest sought to be protected by the [plaintiff] is arguably within the zone of interests to be protected or regulated by the statute . . . .'" *Fort Trumbull Conservancy, LLC* v. *New London*, 265 Conn. 423, 432, 829 A.2d 801 (2003).

The plaintiffs sought a declaratory judgment from the court pursuant to § 4-175. Section 4-175 provides in relevant part: "(a) If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff and if an agency (1) does not take an action required by subdivision (1), (2) or (3) of subsection (e) of section 4-176, within sixty days of the filing of a petition for a declaratory ruling, (2) decides not to issue a declaratory ruling under subdivision (4) or (5) of subsection (e) of said section 4-176, or (3) is deemed to have decided not to issue a declaratory ruling under subsection (i) of said section 4-176, the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. The agency shall be made a party to the action. . . ." Section 4-175 (a) can be read to contain two requirements for the plaintiffs to be statutorily aggrieved.

First, we address the second requirement of statutory aggrievement under § 4-175 (a), namely, whether the

agency satisfied § 4-175 (a) (1), (2) or (3) sufficiently for the plaintiffs to meet that requirement of statutory aggrievement. We conclude that the department and its commissioner did fulfill the requirement of § 4-175 (a) (2).[14] The plaintiffs, pursuant to § 4-176, submitted their petition for a declaratory ruling to the department challenging the grant of the moratorium certificate, which was subsequently denied by the commissioner. Specifically, the commissioner declined to issue a declaratory ruling because the commissioner "believe[d] that neither statement requested by the [plaintiffs was] appropriate for a declaratory ruling under . . . § 4-176 or [Regulations of Connecticut State Agencies] § 8-203-5 (e) and therefore the [c]ommissioner decline[d] to issue a declaratory ruling in this matter." This declination was in conformance with § 4-176 (e) (5)[15] because the department decided not to issue a declaratory ruling and stated the reasons for its action. The department and its commissioner's actions, therefore, satisfied the statutory requirement under § 4-175 (a) (2) that permits a plaintiff to seek a Superior Court ruling as to the application of § 8-30g (*l*).

Next, we address whether the plaintiffs fulfilled the first requirement of statutory aggrievement under § 4-175 (a), namely, whether § 8-30g "interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff[s]." We conclude that the plaintiffs failed to satisfy this requirement for statutory aggrievement.

---

[14] General Statutes § 4-175 (a) provides in relevant part: "If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff and if an agency . . . (2) decides not to issue a declaratory ruling under subdivision (4) or (5) of subsection (e) of said section 4-176 . . . ."

[15] General Statutes § 4-176 (e) provides in relevant part: "Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall . . . (5) decide not to issue a declaratory ruling, stating the reasons for its action."

"An action for a declaratory judgment, valuable as it has become in modern practice, is not a procedural panacea for use on all occasions. . . . In providing statutory authority for courts to grant declaratory relief, the legislature did not intend to broaden their function so as to include issues which would not be such as could be determined by the courts in ordinary actions. . . . The declaratory judgment procedure consequently may be employed only to resolve a justiciable controversy where the interests are adverse, where there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement. . . . A party pursuing declaratory relief must therefore demonstrate, as in ordinary actions, a justiciable right in the controversy sought to be resolved, that is, contract, property or personal rights . . . as such will be affected by the [court's] decision . . . . A party without a justiciable right in the matter sought to be adjudicated lacks standing to raise the matter in a declaratory judgment action." (Citations omitted; internal quotation marks omitted.) *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, 218 Conn. 335, 347–48, 589 A.2d 356 (1991).

The plaintiffs' action is for a declaratory judgment, but there still must be a justiciable controversy between adverse interests. The interests sought to be protected by the plaintiffs must be within the zone of interests protected by the declaratory judgment statute, § 4-176. The plaintiffs, therefore, must have a right that will be affected by the court's decision. As discussed in part I A of this opinion, the plaintiffs do not have a specific, personal and legal interest in the moratorium because they did not have a pending affordable housing application that would have been affected by the moratorium. Additionally, the only pending application that the plaintiffs had in place, the floating zone creation application,

was for the creation of an affordable housing floating zone that would have affected the community as a whole, not the plaintiffs specifically, and the denial of which they have appealed under § 8-8. The plaintiffs, therefore, have not established an interest distinguishable from the general public interest, enabling them to bring an action for declaratory judgment.

Our Supreme Court has held "that a party who was simply a member of the general public who has not demonstrated how she was harmed in a unique fashion by the conduct she had challenged in a declaratory judgment action had failed to establish a colorable claim of *direct* injury, and accordingly lacked standing to maintain the action. . . . [N]either the plaintiffs in this case nor their members have an interest in [the] decisions . . . that is distinguishable from that of the general public. Consequently, the plaintiffs lacked standing to challenge the decisions in a declaratory judgment action, and the action was properly dismissed." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 348. Just as in *Connecticut Business & Industry Assn., Inc.*, the plaintiffs here do not have a direct injury that would allow them to maintain this action. See part I B of this opinion. The plaintiffs have not shown a direct, unique injury resulting from the moratorium that they challenged in their declaratory judgment action.

In *Pinchbeck* v. *Dept. of Public Health*, supra, 65 Conn. App. 201, this court affirmed the judgment of the trial court, which dismissed the plaintiffs' action for a declaratory judgment, pursuant to § 4-175, because the plaintiff lacked standing to bring a declaratory judgment action under that statute. Id., 202–203. The plaintiff sought a declaratory judgment after the department of public health denied her request for intervenor status in the department of public health's evaluation and approval of a proposed sewage disposal system. Id. The

plaintiff owned real property abutting the real property that belonged to the parties who proposed the sewage disposal system to the department of public health, but the plaintiff failed to show that her real property, and by extension she, was aggrieved by the department of public health's action. Id., 203–204, 209.

This court stated: "The issue then is whether the plaintiff is entitled to seek the relief authorized by the statute. Standing is not conferred upon a plaintiff merely by virtue of the fact that the complaint recites the provisions of the statute under which it is brought. . . . Rather, a complaint brought pursuant to § 4-175 must set forth facts to support an inference that a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff." (Internal quotation marks omitted.) Id., 206. The plaintiff in *Pinchbeck*, just as the plaintiffs in the present case, failed to allege "that any statute, regulation or final decision of the agency, or its threatened application, has interfered with or impaired, or threatens to interfere with or impair, the legal rights of the plaintiff." (Internal quotation marks omitted.) Id. As discussed previously in this opinion, the moratorium in the present case does not interfere with the plaintiffs' legal rights because the denial of the floating zone creation application did not fall under the § 8-30g appeals process. Even if the appeals process did apply, the plaintiffs had no more legal right to seek a declaratory judgment under § 4-176 based on the denial of the creation of a floating zone over the whole town than the *Pinchbeck* plaintiff did in seeking to challenge a department of public health decision regarding that plaintiff's neighbors' real property because they both failed to show an individualized interest or injury. The plaintiffs, therefore, failed to fulfill the first requirement of statutory aggrievement

under § 4-175 (a), because § 8-30g does not interfere with or impair, or threaten to interfere with or impair the legal rights or privileges of the plaintiffs.

The plaintiffs, not being classically or statutorily aggrieved, therefore, did not have standing to bring their request for a declaratory ruling. Accordingly, the court properly dismissed their case.

The judgment is affirmed.

In this opinion the other judges concurred.